IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

March 2, 2012

RE:   DEVON BELL V. MR. GLUNT, ETAL
        CA No. 11-3676

### NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Strawbridge, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By:
LINDA V. JERRY, Deputy Clerk

cc:   BELL
       GLEBE

Courtroom Deputy to Judge Slomsky

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON BELL, | : | CIVIL ACTION |
|     Petitioner, | : | |
| | : | |
|     v. | : | |
| | : | |
| SUPERINTENDENT GLUNT, *et al.*, | : | NO. 11-3676 |
|     Respondents. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

February 1, 2011

Before the Court for Report and Recommendation is the *pro se* petition of Devon Bell (alternatively "Bell" or "Petitioner") for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated at the State Correctional Institution in Houtzdale, Pennsylvania serving a term of life imprisonment, with two additional consecutive terms of five to ten years imposed by the Philadelphia Court of Common Pleas for first degree murder, aggravated assault, criminal conspiracy, and weapons charges.[1] He raises claims under the Fourteenth Amendment's Due Process Clause pertaining to the sufficiency of the evidence, and under the Sixth Amendment pertaining to his rights to confrontation and representation by effective counsel. For the reasons set forth below, we find that the claims raised are either procedurally defaulted, or were rejected by the state courts pursuant to a reasonable application of federal law. We accordingly recommend that the petition be denied and dismissed.

---

[1] We note that while Petitioner is currently confined within the Western District of Pennsylvania, which includes Clearfield County, *see* 28 U.S.C. § 118(c), venue is proper here in that his confinement grew out of a prosecution and conviction within the Eastern District of Pennsylvania. *See* 28 U.S.C. § 2241(d).

1

# I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Bell waived his right to a jury trial and on December 10, 2001, was convicted of first degree

murder, aggravated assault, criminal conspiracy, and firearms violations by Judge James A.

Lineberger in the Philadelphia Court of Common Pleas.[3]  Judge Lineberger then sentenced him to

life imprisonment for the murder conviction, and two consecutive terms of five to ten years on the

other offenses.

The state court described the events giving rise to the charges as follows:

> On the evening of December 19, 1990, Bell and his co-conspirator,
> Junior Thompson ("Thompson"), drove in Bell's black Camaro to the
> Mill Creek Projects on North 46th Street in Philadelphia. Bell told
> Thompson that Bell had an argument with some men at the projects.
> While they drove, Bell handed his gun, a .30 caliber carbine pistol, to
> Thompson.
>
> Once they reached 46th Street, Bell and Thompson parked the car and
> began walking up 46th Street. Thompson handed Bell's gun back to
> Bell. On 46th Street, Bell and Thompson intercepted four individuals

---

[2] In preparing this Report, we have reviewed Bell's *pro se* petition for the issuance of a writ of habeas corpus (Doc. No. 1) ("Pet."); the Brief of Petitioner, Devon Bell (Doc. No. 7) ("Pet. Br."), the District Attorney of Philadelphia County's response to the petition (Doc. No. 10) ("Resp."); Petitioner's reply (Doc. No. 11) ("Pet. Reply"); and the original state court record that we received from the Philadelphia Clerk of Quarter Sessions, as well as the electronic docket, *Commonwealth v. Devon Bell*, CP-51-CR-0702871-1999, available at: http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?docketNumber=CP-51-CR-0702871-1999 ("State Court Docket"). We have also reviewed the brief Bell filed in his PCRA appeal to the Superior Court, which is not included on our Court's docket, but which we found on Westlaw. *See Brief of the Appellant, Devon Bell*, 2009 WL 6825786 ("Pet. App. Br.").

[3] Bell's conviction occurred approximately eleven years after the events for which he was charged. For approximately eight of those years, he lived in New York under assumed names. Upon his apprehension he was extradited to Pennsylvania and formally charged with the crimes of which he was convicted. *Commonwealth v. Bell*, No. 1246 EDA 2003, slip opin. at 3 (Pa. Super. Ct. Mar. 18, 2003) [Resp. Ex. A.].

walking together, Laura Brickerstaff ("Brickerstaff"),[4] Yolanda Gilliam ("Gilliam"), Vivian Smickle ("Smickle") and Ainsworth Kerr ("Kerr"). A fifth individual, known as "Wolf," had earlier separated from the four and was walking ahead of them on 46th Street. Bell stopped the four individuals, pointed his gun at them and ordered them to drop to the ground. Smickle dropped to the ground and Bell immediately shot Smickle in the back. The other three individuals ran.

Brickerstaff ran to safety inside of a building, and Gilliam hid behind a parked car. Kerr attempted to run across the street, but Bell shot Kerr in the leg. Kerr fell to the ground, got up and tried to run again. Bell then shot Kerr in the other leg. Next, Wolf began to shoot at Bell, who then returned fire at Wolf. Thompson urged Bell to leave and the two ran back to the Camaro. Once in the car, Bell passed his gun back to Thompson. Gilliam then ran to Kerr and helped Kerr to safety.

Police officers several blocks away heard the gunshots and went to investigate. When they arrived at 46th Street, they saw Bell's black Camaro leaving the scene with Thompson in the passenger seat holding a gun out of the window. The officers chased the Camaro. Bell and Thompson eventually abandoned the car and fled on foot. Although the police apprehended Thompson, they could not catch Bell; however, the police retrieved Bell's gun from the passenger side floor of the Camaro.

Smickle died as a result of the gun shot wound to his back. The bullet lacerated Smickle's lungs and heart and exited through his chest. The gun shot wounds to Kerr's legs required him to be hospitalized for three months.

Over eight years later, Bell was apprehended in New York, where he had been living under assumed names. Bell was extradited to Pennsylvania and charged with crimes related to this incident.

*Commonwealth v. Bell*, No. 1246 EDA 2003, slip opin. at 1-3 (Pa. Super. Ct. Mar. 18, 2003) [Resp.

Ex. A.].

---

[4] We observe that Brickerstaff's name is at times spelled this way — with an "r"— and at times appears as "Bickerstaff." *(See, e.g.,* Pet. Br. at 5.) For the sake of consistency, we refer to her as Brickerstaff throughout.

. At Bell's trial, the Commonwealth called as witnesses Brickerstaff (N.T. 08/09/01 at 44-99), Gilliam (N.T. 08/09/01 at 100-144), Thompson (N.T. 08/10/01 at 6-76), Dr. Ian Hood, of the Philadelphia Medical Examiners' Office (N.T. 08/10/01 at 78-93), and Officer John Finor of the Firearms Identification Unit of the Philadelphia police department (N.T. 08/07/01 at 14-30),[5] as well as several other police officers and detectives (N.T. 08/09/01 at 3-42; 145-150, 163-168). Ainsworth Kerr, incarcerated in North Carolina at the time, did not testify in person, but Judge Lineberger admitted his prior sworn testimony from a preliminary hearing. (*See, e.g.,* N.T. 08/10/01 at 7.) Petitioner did not testify, nor did he offer any witnesses. (Pet. Reply Ex. A.) His counsel described the defense strategy as one "based on the fact that the wounds and the ballistics recovered indicated that there was a shootout between at least two people and that the decedent could not have been shot as the witness claimed." (*Id.*)

Bell did not initially file a direct appeal. He did, however, pursue collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa.Cons. Stat. §§ 9541-46 ("PCRA"), and was granted relief by the PCRA Court to file a belated direct appeal on a *nunc pro tunc* basis. On that appeal, which alleged only insufficiency of the evidence, he was represented by Attorney Lee Mandell.[6] The Pennsylvania Superior Court dismissed his claims as without merit. *See*

---

[5] In that Petitioner's trial took place many years after the incident for which he was charged, the original examiner from the Firearms Identification Unit had retired from the police department before the trial. Accordingly, Officer Finor "reexamine[d] the evidence that was submitted in the Homicide Division Investigation" and prepared his "own report and addendum to the" original report submitted in this case. (N.T. 08/07/01 at 14-15.)

[6] In that appeal, Petitioner's insufficiency claim had two principal parts: first, he alleged that the Commonwealth failed to prove that he was the gunman in the crime; second, he claimed that the Commonwealth had not proven the necessary elements of each of the crimes of first-degree murder, aggravated assault, and criminal conspiracy . *See Commonwealth v. Bell*, No. 1246 EDA 2003 (Pa. (continued...)

4

*Commonwealth v. Bell,* No. 1246 EDA 2003 (Pa. Super. Sep. 10, 2004) [Resp. Ex. A.]. On January 28, 2005, the Pennsylvania Supreme Court denied his petition for allocatur. *Commonwealth v. Bell,* 582 Pa. 661, 868 A.2d 450 (2005). Petitioner did not seek *certiorari* with the United States Supreme Court.[7]

On March 25, 2005, Petitioner again sought collateral relief under the PCRA. Proceeding *pro se,* he asserted that he suffered violations of his due process rights pertaining to "witness credibility" and effective assistance of counsel at trial because his trial counsel: failed to challenge inconsistent testimony by the Commonwealth's witnesses, the ballistic expert and medical examiner; failed to preserve his Sixth and Fourteenth Amendment rights to a jury trial and proper jury waiver; failed to request "an Arrest of Judgment with regard to all charges/convictions"; failed to preserve his direct appeal; and failed to file post verdict or post sentencing motions. Petitioner also alleged that his "[a]ppellate counsel was ineffective for not properly raising these issues in Petitioner's Direct Appeal"; and that the prosecutor had committed misconduct by "threatening Petitioner that he would get the Death Penalty if Petitioner took a jury trial instead of a bench trial." *Memorandum in Support of P.C.R.A.* filed 05/24/05, at 1-2 [St. Ct. Rec. Doc. D-11]. He additionally argued that his appellate counsel was ineffective for failing to raise these issues on appeal.

Upon the appointment of counsel, Samuel C. Stretton, Esquire, Bell filed an amended petition. *See Motion and Petition of the Defendant, Devon Bell, for Post Conviction Collateral*

---

[6](...continued)
Super. Sep. 10, 2004) [Resp. Ex. A., at 5.].

[7] Although Petitioner did not appeal his first PCRA petition to the United States Supreme Court, he appears to have sought *certiorari* on his second PCRA attempt, as referenced below. *See Bell v. Pennsylvania,* 131 S.Ct. 1796 (2011).

5

*Relief Pursuant to Pennsylvania Rules of Criminal Procedure, Rule 901, et al., and Pursuant to 42 PA.C.S.A. 9541, et al.* filed 12/15/08 [St. Ct. Rec. Doc. D-14] ("Amended PCRA Pet."). The amended petition narrowed the claims to only "ineffective assistance of trial counsel pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and related provisions of the Pennsylvania Constitution." (Amended PCRA Pet., at 3.) Specifically, the petition asserted that his trial and appellate counsel were ineffective: for "having him waive a jury trial by promising him that he would only be convicted of murder of the third degree and would avoid the death penalty"; for "not recommending and telling Mr. Bell that he could not testify during the trial and for not allowing him to testify"; and for "not properly objecting [to] or preserving the allowance of the testimony from the preliminary hearing of Answorth[8] Kerr." (*Id.* at 3-4) The amended petition further alleged that

> Mr. Bell was denied his right to cross examination of Mr. Kerr since there was no adequate opportunity to fully cross-examine him without full statements, prior notes of testimony and the complete criminal record and appropriate time. Therefore, the Defendant was denied his right to confront Mr. Kerr and trial counsel and appellate counsel were ineffective for not properly raising this issue and/or preserving it for appeal.

(*Id.* at 4.) As a final ground, the petition stated that "[t]rial counsel was ineffective for not properly impeaching Commonwealth witnesses with all the inconsistencies in their prior statements." (*Id.*)

The PCRA court granted the Commonwealth's motion to dismiss Bell's petition on July 15, 2009. *See* State Court Docket. *See also Commonwealth v. Bell*, No. 2111 EDA 2009, 4 A.3d 690,

---

.[8] As is the case with Ms. Brickerstaff, Ainsworth Kerr's name at times is spelled with an "i" and at times without, or "Answorth." We perceive the latter to represent a typographical error and regardless, for consistency's sake, refer to him as Ainsworth in our Report and Recommendation.

at 2-3 (Pa. Super. Ct. June 16, 2010) [Resp. Ex. B.]. Bell then filed his Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal (*Commonwealth v. Bell*, No. 2111 EDA 2009, 4 A.3d 690 (Pa. Super. Ct. June 16, 2010) [Resp. Ex. B. at 3]; *See also* State Court Docket), and the court issued its opinion denying the petition on November 17, 2009. *See id. See also Commonwealth v. Bell*, No. CP-51-CR-0702871-1999 (Phila. Ct. Comm. Pl. November 17, 2009) [Pet. Br. Ex. B.]. The Superior Court affirmed the dismissal of his petition on June16, 2010, and the Pennsylvania Supreme Court denied further review on November 16, 2010. *Commonwealth v. Bell*, 608 Pa. 652, 12 A.3d 750 (table). *See also* State Court Docket. On February 4, 2011, Bell filed an appeal to the United States Supreme Court, which denied *certiorari* on March 28, 2011. *Bell v. Pennsylvania*, 131 S.Ct. 1796 (2011).

Bell's subsequent *pro se* petition for the issuance of a writ of habeas corpus ("Pet.") was docketed in our Court on June 6, 2011. (Doc. No. 1) On August 29, 2011, Bell filed a "Brief of Petitioner, Devon Bell" (Doc. No. 7) ("Pet. Br."). On October 21, 2011, the District Attorney of Philadelphia County (on behalf of "Respondents") filed a response (Doc. No. 10) ("Resp.") with accompanying exhibits ("Resp. Ex."), asserting that the petition should be denied in that Bell's claims were either "procedurally defaulted and unreviewable in this forum," or should be dismissed on the merits. (Doc. No. 13, at 7, 21.) Petitioner filed a reply to Respondents' brief ("Pet. Reply") with accompanying exhibits ("Pet. Reply Ex."), on December 5, 2011. (Doc. No. 11.)

## II.    STANDARD OF REVIEW

### A.    Exhaustion and Procedural Default

Out of a sense of comity and federalism, federal court habeas relief is available only for claims where the petitioner has exhausted the corrective processes available in the state court system

7

to protect the rights of persons in state custody. *See* 28 U.S.C. § 2254(b)(1). In order to satisfy this obligation to exhaust available state court remedies and give the state courts a full and fair opportunity to resolve a federal constitutional claim, the state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "Fairly presenting" a federal claim to the state courts requires the petitioner to present both the factual and legal substance of the claim in such a manner that the state court is on notice that the federal claim is being asserted. *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

Where a claim upon which the petitioner seeks habeas relief was not properly presented to the state court or was presented but not considered based upon a state procedural rule that was both independent of the federal question presented and adequate to support the denial of relief, the petitioner is considered to have defaulted that claim. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 749 (1991). Such a claim cannot provide a basis for federal habeas relief unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. *See also Teague v. Lane*, 489 U.S. 288, 308 (1988) (plurality opinion); *Wainwright v. Sykes*, 433 U.S. 72 (1976). To establish cause, the petitioner must show "that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Attorney error rising to the level of a Sixth Amendment violation under *Strickland v. Washington*, 466 U.S. 668 (1994), may establish "cause," but such ineffectiveness first must have been properly presented to the state courts as an independent claim. *See Carrier*, 477 U.S. at 488; *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).

8

To establish prejudice, the petitioner must show "actual prejudice resulting from the errors of which he complains." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). The fundamental miscarriage of justice exception requires that the petitioner supplement his claims with a "colorable showing of factual innocence." *Id.* at 495. The burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

## B.    Claims Adjudicated by the State Court

In cases where the claims presented in the federal habeas petition were adjudicated on the merits in the state courts, the federal court shall not grant habeas relief unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has made it clear that a habeas writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the particular case." *Id.* This requires the petitioner to demonstrate that the state court's analysis was "objectively unreasonable." *Woodford v. Visciotti*,

9

537 U.S. 19, 25 (2002). Working from this standard, we must evaluate each of Petitioner's three claims to determine if any were decided "contrary to or involved an unreasonable application of clearly established federal law."

## C.     Standard for Claims of Insufficiency of the Evidence

The Due Process clause of the Fourteenth Amendment guarantees protection from conviction "'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which'" a criminal defendant is charged. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). The United States Supreme Court recognized in *Jackson* that the Due Process Clause requires the court to assess "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979) (emphasis in original). Given that the fact-finder (here, the judge) is the party responsible "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," the Supreme Court cautioned in *Jackson* that a court reviewing a sufficiency of the evidence challenge under the Due Process Clause must not usurp that role by asking "whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (emphasis in original). Additionally, an analysis of a sufficiency claim must take into account "*all of the evidence.*" *Id.* at 319 (emphasis in original).

## D.     Standards for Claims of Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to evaluate claims of ineffective assistance of counsel in violation of the Sixth Amendment. Under *Strickland*, counsel is presumed to have acted reasonably and effectively unless

10

the petitioner can demonstrate both that "counsel's representation fell below an objective standard of reasonableness" and that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 686-88, 693-94. Applying the *Strickland* standard, the federal Courts of Appeals consistently have held that counsel cannot be held ineffective for failing to raise a meritless claim. *See, e.g., United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *United States v. Kimler*, 167 F.3d 889 (5th Cir. 1999).

We also note that the Supreme Court has recognized that one of the duties of appellate counsel is to select which claims are most likely to obtain relief for their clients based upon the state of the law at that time, even if this means not presenting claims that might be meritorious if a higher court reconsiders a prior holding or repudiates an established state rule. *See, e.g., Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (noting, in a case where counsel presented 13 claims on direct appeal but not a claim upon which his client later sought habeas relief, that counsel's process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy"). *See also Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (noting that "[o]ne element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise"); *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (observing that counsel has "no duty to raise every possible claim" on appeal, that "[a]n exercise of professional judgment is required," and that "[a]ppealing losing issues runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions") (citations and quotations omitted).

When the Pennsylvania appellate courts have addressed a claim on the merits, our analysis must be guided by the deferential standard of review provided for in § 2254(d). As the *Strickland*

11

standard itself is a "general standard," and the Supreme Court recognizes that a state court "has even more latitude to reasonably determine that a defendant has not satisfied that standard," our review of a state court decision on the merits of an ineffectiveness claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In these circumstances, we "take a highly deferential look at counsel's performance, *Strickland, supra*, at 689, through the deferential lens of § 2254(d), *Mirazayance, supra*, at n.2." *Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1403 (2011).

## III.   DISCUSSION

Bell's overarching claims are threefold: he alleges first what we construe as a due process claim that his conviction was based on insufficient evidence in that the Commonwealth's witnesses provided inconsistent and inaccurate testimony at trial; second, a confrontation clause claim that one witness' preliminary hearing testimony should not have been admitted because he was not brought to Pennsylvania to be cross-examined; and third, that his trial and appellate counsel were ineffective for a variety of reasons.[9] Specifically, Bell claims that his trial counsel forced him to waive both a jury trial and his right to testify in his own defense. He further contends that counsel erred by failing to impeach the witnesses who provided inconsistent statements, and for failing to object to the admission of the preliminary hearing testimony of the allegedly unavailable witness. He also makes a passing argument that his counsel was ineffective for failing to file a direct appeal upon his conviction. Respondents do not contest the timeliness of the petition but urge that it be denied with prejudice and without a hearing, in that the claims are procedurally defaulted or have been reasonably rejected by the state courts as lacking merit. (Resp. at 21.) For the reasons set out within,

---

[9] As we describe in more detail below, we had difficulty making out where Bell actually presented a claim of ineffective assistance of appellate counsel, but address such an argument notwithstanding this difficulty in that Respondents briefed the issue. *See, infra* Section B.

12

we agree.

## A.   Ground One: Due Process Sufficiency of the Evidence Claim

Petitioner identifies as his first ground for relief that he was denied his right to a fair trial in that he was convicted despite the fact that "there was more than a reasonable doubt, when none of the testimony given matched each other, nor the evidence." (Pet. Br. at 2.) In other words, he asserts that the Commonwealth's witnesses presented insufficient evidence to legally establish his participation in the crimes for which he was convicted.[10]

Specifically, Petitioner takes issue with the testimony offered by several of the Commonwealth's witnesses, arguing that certain testimony was rife with contradictions, and that the only consistent evidence from the prosecution's witnesses was contradicted by the medical examiner's opinion. He details the testimony of Commonwealth witness Brickerstaff, whose statements at trial he condemns as contradictory to what she stated "at the police station under the

_____

[10] We observe that the manner in which Bell presented his sufficiency claim in his *nunc pro tunc* appeal differs from the way in which he substantiates it in the habeas appeal before us. In his direct appeal, Bell concentrated on what he perceived as the Commonwealth's failure to prove that he was the gunman in the crime, and failure to prove the necessary elements of each of the crimes of which he was convicted. *See Commonwealth v. Bell*, No. 1246 EDA 2003 (Pa. Super. Sep. 10, 2004) [Resp. Ex. A., at 5.]. In this appeal, he characterizes his conviction as resting on "more than a reasonable doubt," specifically due to inconsistencies in Commonwealth witnesses' testimony. (Pet. Br. at 2.) We acknowledge that this assertion could be interpreted as a claim that the verdict is not supported by the weight of the evidence, as opposed to one regarding the sufficiency of the evidence. While we acknowledge this possibility, we also observe that our Court has consistently dismissed this type of claim as not cognizable on habeas review. *See, e.g., Green v. Fisher*, Civ. No. 10-5521, 2011 WL 6046915, *11 (E.D. Pa. May 23, 2011), *approved and adopted*, 2011 WL 6046904 (E.D. Pa. Dec. 6, 2011); *Ming v. Tennis*, Civ. No. 06-1673, 2007 WL 1030329, *2 n.1 (E.D. Pa. Feb.13, 2007) (holding that weight of the evidence claims do not provide basis for habeas relief), *approved and adopted*, 2007 WL 954107 (E.D. Pa. Mar. 21, 2007); *Alamo v. Frank*, No. 97-3022, 1999 WL 79659, *1 n.2 (E.D. Pa. Jan.15, 1999) (finding that "It is beyond the province of this court to consider the weight, as opposed to the sufficiency, of the evidence."); *Smith v. Vaughn*, No. Civ. A. 96-8482, 1997 WL 338851, *8 (E.D. Pa. June 17, 1997). Accordingly, even if Bell were making a weight of the evidence claim, it must be denied.

13

assumed name of Tracy Williams." (Pet. Br. at 5.) He similarly challenges the account offered by Commonwealth witness Yolanda Gilliam, whose testimony, he contends, contradicted her previous statements and misidentified the murder weapon. (*Id.* at 5-6. *See also* Pet. Reply at 2.) Specifically, he alleges that she first "testified that Mr. Bell ordered everyone to the ground and started shooting" and "[t]hen in contrast to this, she later testified that no words were spoken before the shooting occurred." (*Id.*) Bell further points out that Gilliam testified to having "hid behind a car during the shooting," which contradicted her "initial statement." (*Id.*) Finally, he claims that she misidentified the murder weapon as an AK-47 assault rifle, which is drastically different than the 30-caliber pistol that the police ballistics expert identified as the murder weapon. (*Id.* at 5-6.)

Bell next argues that the trial testimony of witness Junior Thompson was "in contrast to the other statements which place Mr. Thompson with Mr. Bell when the shooting started," and was flawed with respect to where Thompson would have been in relation to Petitioner at the time of the shooting.[11] (Pet. Br. at 6. *See also* Pet. Reply at 4.) Finally, Petitioner argues that the testimony of Dr. Ian Hood contradicts the rest of the witnesses' assertions regarding the range from which the shots were fired. (Pet. Br. at 6.) Bell claims that Dr. Hood testified that "there was no evidence of close range firing, which contradicts the only common relationship in all the other testimony, in that

---

[11] Thompson testified to being across the street from Bell at the time the shooting commenced, which Bell alleges renders his statement about what happened "during a time of reduced visibility" suspect in that it was "descriptive on details he could not have been able to have seen and vague on those he should have been able to see." (Pet. Br. at 6.)

In his reply brief, Petitioner raised the argument that Thompson's testimony regarding where Bell would have been standing at the time of the shooting was "further discredited by [a police officer's] testimony which place[d] the firearm in Mr. Thompson's possession as the two departed the area." (Pet. Reply at 2.)

14

everyone was in agreement" that the shots "were fired at close range."[12]  (*Id.*)  On the whole, he argues that "[i]t should be evident that no jury could come to such a conclusion as rendered, nor any conclusion when faced with such a v[]ariance in the evidence."  Or, in other words, that "no single person of sound mind and reasonable thought could have randomly selected parts of or the whole [of] the multip[le] inconsistent statements that v[a]ry so greatly and fail to match the physical evidence and reach the same conclusion, let along a panel of twelve."[13]  We construe this as a Due Process claim and consider it accordingly.

Petitioner has "fairly presented" to the state courts the claim that he is entitled to habeas relief due to the insufficiency of the evidence. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The Superior Court denied relief as to this claim on the merits, and thus it is now properly before us for review.  Accordingly, we may find that Bell is entitled to habeas relief on this ground only if he can demonstrate that the "state court applie[d] a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decide[d the] case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Upon consideration of Bell's *nunc pro tunc* appeal, the Pennsylvania Superior Court rejected

---

[12] Bell further suggests that "[t]he only way for this to be possible, would be for Thompson to be firing with his hand stretched out the window and over the roof of the Camaro, as Bell was the driver, as the officer states.  But this inconsistency leads to Bell passing the weapon to Thompson, who already stated he had the weapon before the incident."  (Pet. Reply at 4.)

[13] Specifically, he alleges that "all the witness statements changed numerous times before and during trial, which should have qualified for impeachment of the witnesses" (Pet. Reply at 2), and that the evidence was insufficient for a legitimate conviction when "the testimony range[d] from a handgun to an assault rifle, close range shooting to distant firing, witness's placing the weapon in the plaintiff's hand, but police testimony placing it in Mr. Thompson[']s." (*Id.* at 3.)

15

the argument that Petitioner's conviction should be vacated due to "'insufficient evidence as a matter of law to sustain any of the charges.'" (*Commonwealth v. Bell*, No. 1246 EDA 2003, slip opin. (Pa. Super. Ct. Mar. 18, 2003) [Resp. Ex. A., at 3] (quoting Bell's Brief to the court, at 3).) Applying the appropriate deferential standard, the Superior Court concluded that the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to enable a fact-finder to determine that all of the elements of each crime were established beyond a reasonable doubt. (*Id.* at 4-9.) We find nothing unreasonable in the state court's conclusion. Rather, our review of the Superior Court's decision reveals that these claims were given a thorough assessment of the facts and circumstances giving rise to each of Bell's convictions.[14] (*See id.*)

In addition, we are guided by the "doubly deferential" standard with which we are to evaluate the state court's conclusions on sufficiency of the evidence claims. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The applicable standard requires an additional level of deference, above that generally accorded on habeas review. *See Jackson v. Virginia*, 443 U.S. 307, 323 (1979) (holding that a petitioner alleging sufficiency claims "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.") Bell's arguments in support of relief on this claim do not adhere to

---

[14] The Superior Court provided thorough descriptions of how the testimony offered by Thompson, Gilliam and Brickerstaff "reveal[ed] sufficient evidence" to establish each element of each of the crimes for which Bell was convicted. *Commonwealth v. Bell*, No. 1246 EDA 2003, slip opin. at 3 (Pa. Super. Ct. Mar. 18, 2003) [Resp. Ex. A., at 6-9.] Ultimately, the court concluded that Petitioner "was not merely present at the scene, as the evidence shows that Bell instigated the trip to the Mill Creek Projects, was the gunman during the crimes and was the getaway driver in their attempt to flee." (*Id.* at 9). We are satisfied that in reaching these conclusions, the Superior Court did not act so objectively unreasonably that no fairminded fact-finder would have reached the same conclusion. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *See also Jackson v. Virginia*, 443 U.S. 307, 323 (1979).

16

the *Jackson* standard. Rather, in pointing to the circumstances that could impugn the contested

witnesses' credibility—minor differences in the recollections offered about events that occurred over

a decade earlier—Petitioner seeks to view the evidence in the light most favorable to *him* and not

to the prosecution. As Respondents point out, "Bell has done nothing more than describe in

summary fashion his wholly predictable disagreement with the trial court's factual findings." (Resp.

at 8.) Even if there were inconsistencies or inaccuracies in aspects of individual witness' testimony

at his trial, when viewed as a whole, the evidence upon which he was convicted provides sufficient

grounds for a "rational trier of fact" to "have found proof of guilt beyond a reasonable doubt."

*Jackson*, 443 U.S. at 323.

The Pennsylvania Superior Court has neither contradicted nor unreasonably applied *Jackson*

when it denied Petitioner's sufficiency of the evidence claim. Accordingly, we are unable to

recommend that relief be granted based upon Petitioner's first claim.

**B.     Ground Two: Confrontation Clause Claim**

In conjunction with his sufficiency claim, Petitioner also Bell asserts that he was deprived

of his Sixth Amendment right to confront one of the witnesses against him. (*See* Pet. Br. at 2,

arguing that this "hindered the process and denied him of his Constitutional right to a fair trial.")

Specifically, he argues that the state court should not have admitted the testimony of Ainsworth Kerr,

who was not present at trial. (*Id.* at 3.) In support of that claim, he contends that "Mr. Kerr was a

key witness against him, who was serving a sentence in another state for murder" and that

> [t]he transcripts of Mr. Kerr's statement offered against Mr. Bell at
> his trial had not been taken at a time and under any circumstances
> affording Mr. Bell through his counsel an adequate opportunity to
> cross-examine Mr. Kerr[...and that] its introduction in a
> Commonwealth court in a criminal case against Mr. Bell[] denied him

17

> the privilege of confrontation, guaranteed by the Sixth Amendment
> and thus denied [him] a fair trial.

(*Id.*) In support of these claims, Petitioner provides citations to several cases in which the United States Supreme Court reinforced the importance of the right of an accused to cross-examine the witnesses against him. (*See, e.g. id.* (citing *Turner v. State of La.*, 379 U.S. 466, 466-473 (1956)).[15]

Even if we interpret Bell's petition to make out a separate confrontation clause violation claim, we conclude that it has not been properly exhausted. As we described above, on his *nunc pro tunc* appeal, Bell argued only that there was insufficient evidence to support the convictions. (*See Commonwealth v. Bell*, No. 1246 EDA 2003, slip opin.(Pa. Super. Ct. Mar. 18, 2003) [Resp. Ex. A., at 3] (quoting Bell's Brief to the court, at 3).) Bell did challenge the state court's finding on the confrontation issue, but only in the context of arguing that his counsel was ineffective by failing to assert a separate confrontation clause claim. Accordingly, we deem these claims to have been procedurally defaulted and find no basis either suggested by Petitioner or upon our own independent review to excuse that procedural default.[16] We therefore cannot recommend that habeas relief be

---

[15] In this section, which Bell entitles, "LAW," he also appears to make and support an argument that "[t]he Compulsory Process Clause of the Sixth Amendment[...] grants a defendant the right to call [a] 'witness in his favor.'" (Pet. Br. at 4 (quoting *Washington v. Texas,* 388 U.S. 14, 15 (1967)). We observe that Bell did not call any witnesses on his behalf at his state court trial, but also that he did not make any arguments about being denied the right to do so, either in the state court proceedings or in his petitions to this court. Accordingly, we interpret this argument to be part of his claim regarding the aspect of the Sixth Amendment that grants a defendant the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI.

[16] The United States Supreme Court has established that if claims have been procedurally defaulted, the Court may not review them unless Petitioner establishes either: (1) cause for the default of this claim and actual prejudice as a result of the alleged violation of federal law, or (2) that a fundamental miscarriage of justice will result if this Court does not consider the claim, i.e., due to evidence of his actual innocence of the crime for which he was convicted. *See Coleman v. Thompson,* 501 U.S. 722, 749 (1991).

18

granted based upon this claim.

## C.    Ground Three: Ineffective Assistance Claim

Bell alleges that his trial counsel, Attorney Edward C. Meehan, Jr., was ineffective for a variety of reasons. First, he claims that Meehan allegedly forced Petitioner to waive his right to a jury trial and his right to testify on his own behalf. (Pet. Br. at 7.) Second, he claims that Meehan failed to impeach witnesses with their prior inconsistent statements and, third, that he erred in not objecting to the admission of Kerr's testimony. (*Id.*) In addition, he makes a passing argument that his appellate counsel was ineffective for not raising the same issue on his direct appeal. In that Respondents have briefed the appellate ineffectiveness issue, we also address it below. Finally, Bell presents an argument that his counsel was ineffective for failing to file a direct appeal upon his conviction.[17] (*Id.* at 8.)

---

[17] In support of his several allegations that his trial counsel's performance was deficient, Petitioner notes that counsel was publicly censured "for one year and one day, by the Pennsylvania Board of Review, at the Pennsylvania Supreme Court, for his conduct in this and similar actions in another" case, which "only adds weight to this claim." (Pet. Br. at 7.) We observe that the Disciplinary Board of the Supreme Court of Pennsylvania sent Bell a letter on October 30, 2006, stating that "[o]n October 18, 2006, the Pennsylvania Supreme Court found that Mr. Meehan violated the Rules of Professional Conduct and imposed a public censure on Mr. Meehan." (Pet. Reply Ex. B.) The letter further states that this censure was the result of an investigation conducted specifically upon a complaint by Bell. (*Id.*)

The letter relates to a September 18, 2006 Order from the Supreme Court of Pennsylvania "that Edward C. Meehan, Jr., be subjected to public censure by the Supreme Court." *See* No. 1178 Disciplinary Docket No. 3, Attorney Registration No. 55789, available at: *http://www.aopc.org/ OpPosting/ disciplinaryboard/dboardopinions/26DB2006-Meehan.pdf.* The Order was issued upon the June 27, 2006 "Recommendation of the Three-member Panel of the Disciplinary Board of the Supreme Court of Pennsylvania," which resulted from a joint petition, signed by Bell's PCRA counsel, Samuel C. Stretton, Esquire, and Attorney Meehan. *Id.* In the joint petition, Attorney Meehan acknowledged that despite Bell's having informed him "in open court," that he wished to appeal his conviction, Meehan "failed to file the Notice of Appeal within thirty days from the judgment of sentence, thereby causing Mr. Bell to lose his direct appeal rights." (*Id.*) As we discuss in subsection 4., *infra*, this failure to file a direct appeal ultimately did not prejudice Petitioner, as (continued...)

19

## 1. Ineffectiveness by Waiver of Jury Trial and Right to Testify

In his submission to this Court, Petitioner complains that his counsel precluded him from

testifying in his own defense, and that "Attorney Meehan's ineffectiveness [was] furthered by his

unlawful [coercion] of Mr. Bell to waive a trial by jury with the false promise of a third degree

murder charge." (Pet. Br. at 2.) Respondents challenge this claim as procedurally defaulted,

pointing to an abandonment on appellate review of these assertions, such that the Superior Court did

not review them in deciding his PCRA appeal. (Resp. at 12.)

In his brief in support of his amended PCRA petition, Petitioner asserted:

> Mr. Bell is alleging his trial counsel misled him in waiving his right
> to a jury trial. Mr. Bell would testify that he was promised the death
> penalty would be withdrawn and that he would receive no higher than
> third degree if he waived his right to a jury trial. There is a full[]
> colloquy of the waiver and Mr. Bell was advised that the death
> penalty was withdrawn and, in fact, it was. There was no mention,
> however, of the third degree murder promise. Mr. Bell would testify
> that he would not have waived his right to a jury trial if there had not
> been the promise told him by his counsel, Edward Meehan, that the
> verdict would be no higher than third degree. He contends his trial
> counsel misled him and was ineffective for doing so.

(Amended PCRA Pet. at 12-13.) His brief went on to address his inability to take the stand:

> Mr. Bell would testify that he wanted to testify during the trial, but his
> counsel precluded him from doing so. There was a full colloquy on
> this and Mr. Bell waived his right to testify. But he contends that his
> trial counsel failed to adequately advise him of his right to testify and
> the fact that his testimony was critical to present a self defense in this
> particular matter. There were suggestions in the record that there was
> another shooter by the name of Wolf. That was referenced by Mr.
> Kerr and also by the female witnesses. Mr. Bell's testimony was
> needed to demonstrate any conduct was done in self defense. He
> contends that his trial counsel was ineffective for improperly advising

[17](...continued)
his direct appeal rights were restored *nunc pro tunc.*

him and misleading him.

(*Id.* at 13.) On PCRA appeal to the Superior Court, however, Bell limited his ineffectiveness argument to the issues surrounding Kerr's testimony, which we discuss below. *See Brief of the Appellant, Devon Bell*, 2009 WL 6825786, at \*6, \*11-13 ("Pet. App. Br."). Accordingly, Petitioner has not demonstrated that he "fairly presented" this aspect of his ineffectiveness claim to the state court as required by 28 U.S.C. § 2254(b)(1), and it is therefore procedurally defaulted.[18] We see no basis either suggested by Petitioner or upon our own independent review to excuse the procedural default here. *See, supra,* n.16.

## 2. Ineffectiveness by Failure to Object to Inconsistent Testimony

Bell argues that his trial "counsel failed to properly challenge the witnesses as to their conflicting testimony or the credibility of the testimony." (Pet. Br. at 8.) Specifically, he challenges Attorney Meehan's performance "[i]n a case where testimony does not match one another, nor the physical evidence, witnesses place another person fleeing from the scene, and no credible or

---

[18] Were we to address this claim on the merits, as Respondents themselves have done, we would conclude that it would not warrant habeas relief. The colloquy with Judge Lineberger makes clear that Petitioner knowingly decided to waive his right to a jury trial, and that he had discussed the ramifications of the decision with his counsel. (*See* N.T. 08/07/01, at 4-12.) Additionally, Bell signed a written waiver form confirming his decision to forego his right to a trial by a jury. (*See id.* at 12.)

The same holds true with regard to his decision not to testify. The colloquy between Bell and Judge Lineberger clearly shows that his decision was also knowing and voluntary. (*See* N.T. 08/10/01, at 97-98.) Accordingly, even if they were not procedurally defaulted, Bell would be unable to make out a case for habeas relief on these claims.

Additionally, to the extent that Bell's habeas petition can be interpreted to establish a claim for ineffective assistance of appellate counsel for not raising his trial counsel's ineffectiveness on this issues, such a claim would not provide grounds for relief. In that we find no merit in the claims of trial counsel ineffectiveness, any derivative claim for ineffectiveness of appellate counsel necessarily fails, as appellate counsel's failure to raise a meritless claim could not have prejudiced Petitioner. *See Strickland*, 466 U.S. 668 (1994).

supported testimony actually can place the Plaintiff as the shooter of the decedent." (*Id.*) Bell did

assert this claim before the PCRA court, where he argued that "his trial counsel did not effectively

cross-examine on all the inconsistencies of the prior statements of the prosecution witnesses."

(Amended PCRA Pet. at 16.)[19] Respondents point out, however, that while Bell "presented th[is]

sub-allegation initially on PCRA review," he then "appears to have abandoned" it on "appellate

review—such that the Superior Court was not given the opportunity to address" it. (Resp. at 12.)

Our review of his appellate brief confirms that he did not pursue this issue on appeal. *See* Pet. App.

Br. at *6, *11-13.[20]

. As with his previously discussed defaulted claims, Bell has not established or even attempted

---

[19] Before the PCRA court, he further offered that "other people were shooting and that he, [Petitioner], was not the shooter and any action was only in self defense. This was not brought out through the examination and through these witnesses and their prior inconsistent statements...his trial counsel was ineffective for not doing so." (Amended PCRA Pet. at 16-17.)

[20] Were we to address this claims on the merits, we would again find that it would not warrant habeas relief. Our review of the trial transcripts lead us to conclude that Bell's counsel did thoroughly cross-examine the witnesses whose testimony Bell condemns as inconsistent. Attorney Meehan did, for example, raise the issue of a potential romantic relationship between witnesses Brickerstaff and Thompson, and of one between Gilliam and Thompson (N.T. 08/09/01 at 69), and did point out that Brickerstaff had provided an initial statement to the police under a different name. (*Id.* at 78 (questioning the witness, "[b]he way, who's Tracy Williams?" and proceeding to probe Brickerstaff as to why she initially attempted to avoid involvement in an investigation after witnessing a murder, by giving the police a false name).) When cross-examining Gilliam, Attorney Meehan pointed to specific portions of her previous testimony from the preliminary hearing held two years earlier and questioned her as to why it differed from some of the representations she was making at the trial. (*See, e.g., id.* at 128-135.) Bell himself acknowledged this in his appellate brief to the Superior Court of Pennsylvania on PCRA review. *See* Pet. App. Br. at *11-13 (in which Petitioner's own counsel described that "[o]n cross-examination, Ms. Gilliam was impeached with her prior statement). *See also id.* at *16 (acknowledging that "[o]n cross-examination, Mr. Thompson was confronted with inconsistencies in his statements.").) Whether or not Attorney Meehan *effectively* impeached these witnesses is not before us, nor has an argument been made that had counsel's cross-examination been more effective, the outcome of the trial would have been different. Accordingly, even if this issue was not procedurally defaulted, Bell has not demonstrated that it provides grounds for habeas relief.

to make a showing of cause for the default. Nor has he set out a claim of actual innocence. *See,* *supra,* n.16. Accordingly, we are unable to recommend that habeas relief be granted based upon these particular ineffectiveness claims, and we review on the merits only his ineffectiveness claim pertaining to the admission of Kerr's testimony.

### 3.   Ineffectiveness by Failure to Object to Kerr's Testimony

Petitioner alleges that trial counsel "failed to prepare as he had not requested, prior to trial, that the witness, Mr. Kerr, be present and brought before the court." (Pet. Br. at 7-8.) He further alleges that his appellate counsel was ineffective for failing to raise the issue of Kerr's unavailability on the direct appeal he was permitted to file *nunc pro tunc.*

Petitioner did exhaust the claim that he is entitled to habeas relief due to allegedly deficient performance by both his trial and appellate counsel for failing to properly challenge the admission of Mr. Kerr's testimony. On appellate review of the dismissal of his amended PCRA petition, Bell's "Statement of the Case" described that "[t]he issue sought to be reviewed is the denial of Mr. Bell's right to confront a key prosecution witness, A[i]nsworth Kerr, when Mr. Kerr was not present at trial and the trial judge allowed the Commonwealth to utilize the preliminary h[e]aring notes of Mr. Kerr against Mr. Bell." (Pet. App. Br. at *6).

The Superior Court denied relief as to this claim on the merits, and thus it is now properly before us. In the PCRA appeal, the court rejected the notion that Petitioner's conviction should be vacated due to this alleged ineffectiveness, concluding that trial counsel "objected strenuously" to the admission of Mr. Kerr's testimony and thus preserved the issue. (*Commonwealth v. Bell,* No.

23

2111 EDA 2009, 4 A.3d 690 (Pa. Super. Ct. June 16, 2010) [Resp. Ex. B., at 4-5].)[21]   The court

further explained that since Petitioner's "direct appeal rights were restored, it fell upon newly-

appointed appellate counsel to raise this issue on [Petitioner's] post-PCRA direct appeal, if this issue

was, in fact, meritorious," and it would therefore confine its ineffectiveness analysis to the appellate

counsel aspect of Petitioner's argument. (*Id.* at 5.)   The court also observed that "arguably

meritorious claims may be omitted from analysis on appeal by counsel in favor of appellate counsel's

pursuit of claims that, in the exercise of appellate counsel's objectively reasonable professional

judgment, offer a greater prospect of securing relief." (*Id.,* citing *Commonwealth v. Sampson,* 900

A.2d 887, 894 (Pa. Super. 2006).)   Applying "the three-pronged ineffective assistance test," the

court noted that an appellant must show that his underlying claim of constitutional error was

meritorious, that counsel's action was unreasonable and, that the action prejudiced the appellant.

(*Id.* at 6.)

In so doing, the court first concluded that the claim lacked merit, in that there was a

reasonable basis for the trial court's decision to find Kerr unavailable, and therefore permit the

admission of his prior testimony. At the time of Bell's trial, Kerr was awaiting trial in North

Carolina and his refusal to sign an extradition waiver, together with the North Carolina court's

---

[21] Our independent review of the transcripts from Bell's trial leads us to conclude both that
Attorney Meehan "objected strenuously" to the admission of Kerr's testimony (*see* N.T. 08/09/01
at 169-172), and that Judge Lineberger gave particularly serious consideration to the issue. (*See id.*
at 172-176. *See also id.* at 169 (indicating the Judge Lineberger would defer his decision on the
admissibility until after he could carefully review the preliminary hearing notes of testimony, which
were submitted to the court as an exhibit), and N.T. 08/10/01 (revealing that Judge Lineberger had
"reviewed the preliminary hearing notes" as well as "Kerr's statement, and based on the evidence
that ha[d] been presented already regarding Mr. Kerr's status in North Carolina, the Court rules he's
unavailable. And I have reviewed the notes of testimony, and [defense counsel] had the benefit of
Answorth Kerr's statement, and they obviously anticipated the fact that he may not be around for
some reason.").)

24

refusal to authorize his transport to Pennsylvania "without a waiver or full extradition proceedings," made him in fact "unavailable."[22] (*Id.*) The Superior Court was reasonably satisfied that the Commonwealth had made a good faith effort to secure his presence at trial. (*Id.* at 7 (citing *Commonwealth v. Smith*, 647 A.2d 907, 911 (Pa. Super. 1994).) Accordingly, any claim that he was not unavailable lacked merit, and Bell's appellate counsel was not ineffective for failing to raise it. (*Id.*)

In addition, the Superior Court determined that the second aspect of Bell's claim also lacked merit, concluding that appellate counsel's decision not to raise this trial counsel ineffectiveness issue on appeal did not constitute appellate counsel ineffectiveness. Consistent with the requirements under Pennsylvania case law, the trial court's determination that Bell's counsel had "a full and fair opportunity for cross-examination" at the preliminary hearing, including access to Kerr's criminal record before that cross-examination, was proper.[23] (*Id.* at 9.) According to the Superior Court, Bell's trial counsel did raise "Kerr's criminal record to the trial court through forceful argument."[24]

---

[22] The court further considered that "[i]nasmuch as Appellant's trial was going to take place approximately 11 years after the victim's killing, the Commonwealth obviously needed to avoid protracted extradition hearings that would delay trial and, thereby, raise the risk of further spoiliation or staleness of trial evidence." *Commonwealth v. Bell*, No. 2111 EDA 2009, 4 A.3d 690 (Pa. Super. Ct. June 16, 2010) [Resp. Ex. B., at 8].)

[23] Bell's preliminary hearing counsel decided not to use Kerr's record in his cross-examination, but that did not render it procedurally deficient. *Commonwealth v. Bell*, No. 2111 EDA 2009, 4 A.3d 690 (Pa. Super. Ct. June 16, 2010) [Resp. Ex. B., at 9-10].) The Court analyzed Bell's claim that "the Commonwealth's provision of this information to [Petitioner] immediately prior to Mr. Kerr's cross-examination did not give [Petitioner's] counsel adequate time to consult this information and utilize it upon cross-examination to cast doubt upon Mr. Kerr's testimony." (*Id.* at 10.) The court disagreed with that assertion, and provided a robust discussion of the basis for that disagreement.

[24] Under the circumstances of this bench trial, Judge Lineberger reviewed Kerr's entire (continued...)

25

(*Id.* at 10-11.) Additionally, the court focused on the fact that Kerr's testimony was "merely cumulative" to that offered against Bell "by the other eyewitnesses to the crime and his co-conspirator in the crime." (*Id.* at 11.) Therefore, the court found, the failure to raise on appeal the admission of Kerr's preliminary hearing testimony was not grounds for an ineffectiveness claim, as Petitioner was not prejudiced by their actions.

We find nothing unreasonable in the state court's conclusion that Petitioner's trial counsel was not ineffective, or its conclusion that his appellate counsel was not ineffective for failing to present the argument to the Superior Court. Although Petitioner focused his appellate ineffectiveness argument on only one aspect of the ineffectiveness test, and thus arguably waived the claim, the Pennsylvania Superior Court still analyzed it on the merits. (*Id.* at 5-10.) The court thereby reasonably carried out clearly established federal law in applying the test for ineffective assistance of appellate counsel. Applying the appropriate "highly deferential" standard to its evaluation of appellate counsel's performance, the court pointed out that appellate counsel's decision not to raise this claim did not prejudice Bell. (*Id.* at 6-11 (finding that first, Kerr could not be considered "available" based on the reasonable efforts of the Commonwealth to obtain his presence for Bell's trial, and second, Bell's preliminary hearing counsel had a full and fair opportunity to cross-examine Kerr.)

Petitioner does not offer any basis upon which we could conclude that the Superior Court unreasonably interpreted and applied the *Strickland* standard when it measured the performance of appellate counsel with respect to Kerr's testimony. We conclude that this claim does not entitle Bell

---

[24](...continued)

criminal record, including the then-open homicide from North Carolina, and was therefore subjected to far more damaging information about Kerr than a jury ever would have been.

to habeas relief.

### 4.   Ineffectiveness by Failure to File a Direct Appeal

Finally, Bell questions whether "Attorney Meehan's ineffectiveness [was] furthered by" his failure "to file a direct appeal on behalf of Mr. Bell?" (Pet. Br. at 2.) He answers this question in the affirmative, arguing that "as continued evidence of his ineffectiveness, [Meehan] not only failed to file a timely Direct Appeal, but failed to file one at all." (*Id.* at 8.) The Superior Court did not directly address this argument in a separate discussion, but did, in the context of analyzing his claim regarding trial counsel's treatment of Kerr's testimony, point out that Bell's "direct appeal rights were restored," which preserved the Kerr issue and all other issues on appeal. (*Commonwealth v. Bell*, No. 2111 EDA 2009, 4 A.3d 690 (Pa. Super. Ct. June 16, 2010) [Resp. Ex. B., at 4-5].)

Petitioner is correct as to Meehan's failure. There is, however, no issue to be resolved as the PCRA court restored his appeal rights and no harm came of any ineffectiveness.[25] Petitioner obviously fails to make out any prejudice. *See Strickland*, 466 U.S. at 686-88, 693-94. Accordingly, we conclude that this claim does not entitle Bell to habeas relief.

### IV.   CONCLUSION

For the reasons set out above, we find that none of Petitioner's claims warrant habeas relief, as none of the claims were denied by the state court due to an unreasonable application of federal constitutional law and because Petitioner has failed to establish a basis for the Court to consider his procedurally defaulted claims. Further, Petitioner has also failed to convince us that his petition warrants further development through an evidentiary hearing or that the interests of justice require that counsel be appointed. *See* 18 U.S.C. § 3006A.

---

[25] *See, supra* n.17.

27

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. A COA should not issue unless the petitioner demonstrates that jurists of reason would debate whether the petition states a valid claim for the denial of a constitutional right. Where the district court has denied a claim on procedural grounds, a COA is not appropriate as to that claim unless it appears in addition that jurists of reason would find the correctness of the procedural ruling to be debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, for the reasons set forth above, we do not believe a reasonable jurist would find the Court to have erred in denying the present petition. Accordingly, we do not believe a COA should issue.

Our Recommendation follows.

28

## **RECOMMENDATION**

AND NOW, this *26th* day of February, 2012, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED WITHOUT AN EVIDENTIARY HEARING.** It is **FURTHER RECOMMENDED** that a certificate of appealability should **NOT ISSUE,** as we do not believe that Petitioner has made a substantial showing of the denial of a constitutional right or that reasonable jurists would find the correctness of the procedural aspects of this Report debatable.

Petitioner may file objections to this Report and Recommendation. *See* Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

29

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON BELL, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT GLUNT, *et al.*, | : | NO. 11-3676 |
| Respondents. | : | |

### ORDER

AND NOW, this       day of       , 2012, upon careful

and independent consideration of the petition for writ of habeas corpus, and after review of

the Report and Recommendation of United States Magistrate Judge David R. Strawbridge,

IT IS ORDERED that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**;

2. The petition for a writ of habeas corpus is **DENIED** without an evidentiary
   hearing; and

3. There is <u>no</u> basis for the issuance of a certificate of appealability.

BY THE COURT:

_____

JOEL H. SLOMSKY,       J.